IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| A.M.Z., a minor, and )<br>N.A.Z., a minor, and )<br>E.K.Z., a minor, by their guardian )<br>BETH ANN PATTERSON )<br>)<br>Plaintiffs, )<br>)<br>vs. )<br>)<br>REMINGTON ARMS COMPANY, LLC, and )<br>SPORTING GOODS PROPERTIES, INC., )<br>)<br>Defendants. ) | Case No. 16-cv-778-wmc |

## AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

COME NOW Plaintiffs, by and through their attorneys, and for their claim for relief against Defendants, Remington Arms Company, LLC and Sporting Goods Properties, Inc., state and allege as follows:

## PARTIES

1. Plaintiffs A.M.Z., N.A.Z., and E.K.Z. (hereinafter "Plaintiffs"), by their guardian, Beth Ann Patterson, are all minor children and are residents of Prairie du Sac, Sauk County, Wisconsin.

2. Defendant Remington Arms Company, LLC (hereinafter "Remington") is a Delaware limited liability company with its principal place of business in North Carolina. FGI Operating Company, LLC is a limited liability company and the sole member of Remington. FGI Holding Company, LLC is a limited liability company and the sole member of FGI Operating Company, LLC. Remington Outdoor Company, Inc. is the sole member of FGI Holding Company, LLC. Remington Outdoor Company, Inc. is incorporated in Delaware and has its principle place of

1

business in North Carolina. Therefore, for the purposes of diversity, Remington is a citizen of Delaware and/or North Carolina. Service should be made at its corporate office located at 870 Remington Drive, Madison, North Carolina 27025-0700 or upon the Wisconsin Secretary of State pursuant to Fed. R. Civ. P. 4(h)(1)(B) unless Remington waives service pursuant to Fed. R. Civ. P. 4(d).

3. Defendant Sporting Goods Properties, Inc. (hereinafter "SGPI") is a Delaware corporation, not authorized to do business in the state of Wisconsin. Service should be made at its corporate office at 1007 North Market Street, M10608 Wilmington, Delaware 19801 or upon the Wisconsin Secretary of State pursuant to Fed. R. Civ. P. 4(h)(1)(B) unless Sporting Goods Properties, Inc. waives service pursuant to Fed. R. Civ. P. 4(d).

**JURISDICTION, VENUE, AND SERVICE OF PROCESS ALLEGATIONS**

4. This Honorable Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 in that Plaintiffs are citizens of the state of Wisconsin; Remington is a Delaware limited liability company with its principal place of business in North Carolina; Remington's members are also citizens of North Carolina and Delaware; and SGPI is incorporated and has its principal place of business in Delaware, and the amount in controversy exceeds Seventy-Five Thousand ($75,000.00) Dollars.

5. Venue is proper within the Western District because Plaintiffs are residents of Sauk County, Wisconsin.

**COMMON ALLEGATIONS**

6. Plaintiffs reside at W14169 West Point Drive, Prairie Du Sac, Wisconsin 53578.

7. Defendants Remington and SGPI (hereinafter collectively "Defendants") were, and are now, engaged in the business of designing, manufacturing, assembling, distributing, and selling

firearms and in this regard did design, manufacture, distribute, sell, and place into the stream of commerce, the Remington Model 700, .30-06 caliber bolt action rifle, including the action, fire control system, and safety, bearing Serial No. 6890035 (hereinafter "subject rifle"), which on information and belief was manufactured by Defendants in 1975, knowing and expecting that said rifle would be used by consumers and around members of the general public.

8. Prior to November 30, 1993, E. I. DuPont de Nemours, Inc. (hereinafter "DuPont") owned 100% of the stock in the company known as Remington Arms Company, Inc. (now Sporting Goods Properties, Inc., i.e. "SGPI"). On or about November 30, 1993, Remington Arms Acquisition Corporation, Inc. (RACI) purchased from DuPont substantially all of the income producing assets of Remington Arms Company, Inc., including the corporate name. The company formerly known as Remington Arm's Company, Inc. changed its name to Sporting Goods Properties, Inc., and RACI changed its name to Remington Arms Company, LLC. SGPI retained certain non-income producing assets, some with significant environmental and other liabilities such that its net worth was reduced to a small fraction of its former so that SGPI may not be able to pay reasonable judgments in this and similar litigation.

9. Remington and/or DuPont expressly and impliedly agreed to assume certain debts and responsibilities including the product liability of SGPI by the terms of the Asset/Sale Purchase Agreement as well as the continuing relationship between Remington, DuPont, and SGPI. Consequently, DuPont and/or Remington are the corporate successors to the product liability claims asserted, now and in the future, against SGPI, including this particular lawsuit.

10. On August 19, 2014, Robert Zick and his brother, Randall Zick, were bear hunting near the Upsala area in Ontario, Canada. The two were staying at the Thunderbird Resort owned by Carey and Mia Bonkamp.

11. On August 19, 2014, Randall Zick was hunting with the subject rifle. When it became time to be picked up by the outfitter, Carey Bonkamp, the Zick brothers began walking the trail back to the road.

12. When they reached the road, Randall stopped to unload the rifle. Robert was standing to the right of Randall. To unload the subject rifle, Randall put the stock on his hip and, with his left hand on the forestock, he used his right hand to push the safety to off and started to move the bolt to work the action to unload the subject rifle. The trigger was not pulled or contacted in any manner. At the same time Robert had climbed up on the embankment to look for the guide and walked in front of Randall. That is when the subject rifle fired, striking Robert in the back of the head causing significant injury and loss of life.

13. Robert Zick (hereinafter "decedent") was 32 years old at the time of his death. He was divorced from Beth Ann Patterson and they were the natural parents of Plaintiffs, A.M.Z., N.A.Z., and E.K.Z. At the time of this filing, Plaintiffs are all three minors.

14. The subject rifle was equipped with a "bolt lock", which required a handler to place the rifle's manual safety in the "fire" position before the bolt could be operated or cycled to load or unload the rifle.

15. Further, the subject rifle has a design unique to bolt-action rifles in that it includes within the Walker Fire Control Trigger Assembly a component called the "trigger connector." The trigger connector is not connected to the trigger body, but rather is held in place by tension from a spring and the side plates which create a fully enclosed housing. (*See* Illustration 1). Upon pulling the trigger the connector is pushed forward by the upper member of the trigger body, which allows the sear to fall and rifle to fire. (*See* Illustration 2).



Illustration 1



Illustration 2

16. The connector sits under the sear with a specified overlap of as little as 20/1000ths of an inch.

17. When a rifle is fired the connector repeatedly separates from the trigger body, creating a gap between the two parts. Because of the gap created between the trigger body and trigger connector upon firing, field debris, manufacturing scrap, burrs from the manufacturing process, lubrication applied at the factory, other lubrication build up, or moisture can foreseeably become

5

trapped inside the enclosed fire control housing and restrict the return of the trigger connector to proper engagement under the sear, thus predisposing the rifle to malfunction in the absence of a trigger pull. The above described conditions have been further enhanced by various interferences created between other parts that are used to comprise this fire control during their assembly. These conditions have been created as the result of tolerances that Remington has adopted for "ease of manufacture" including loose inspection practices of parts prior to their assembly as a cost saving measure on the part of the company. (*See* Illustration 3). Binding created by interference with other parts of the fire control can also interfere with the return of the trigger connector to proper engagement under the sear which will create the same dangerous condition.



Illustration 3

18. When the gap between the connector and trigger is large enough, thereby diminishing the engagement (overlap) of the two parts, the connector will no longer reliably support the sear, allowing the rifle to fire without a trigger pull. These unintended firings have been so persistent and common place, Remington has adopted acronyms for the observed occurrence, *i.e.* Fire on

Bolt Closure "FBC"; Fire on Bolt Opening "FBO"; Fire on Safety Release "FSR"; Jar Off "JO"; Fire on Safe "FOS"; and "Fails to Fire."

19. Remington engineers have testified in product liability litigation across the country that materials can lodge between the connector and trigger, resulting in the connector unable to return to a reliable position to support the sear. Remington undertook several redesign efforts in the 1940s, 1970s, 1980s and 1990s to try to eliminate the function deficiencies associated with materials becoming lodged between the connector and trigger, or binding of the connector with other parts of the fire control.

20. There are design alternatives for the Model 700 rifle and the Walker Fire Control. There is no sound engineering reason to employ a separate connector not physically connected to the trigger. This is evidenced by no other firearm manufacturer in the world utilizing such a device. Many after-market manufacturers have also created replacement triggers to replace the defective Walker Fire Control system that do not include trigger connectors. Mr. Walker confirmed in January 2011 the extra connector served no engineering purpose other than to make operation of the trigger pull smoother for the user, and to reduce the manufacturing cost of the fire control.

21. Acting upon information it has had for years, in 2006 Remington created and started using a new fire control system called the X-Mark Pro. This design eliminated the use of a two-piece trigger design and a separate trigger connector that is not affixed to the trigger body.

22. Plaintiffs, by their guardian Beth Ann Patterson, are bringing this action to recover damages from Defendants for the wrongful death of decedent pursuant to Wis. Stat. § 895.04. Damages include, but are not limited to, loss of future income and support, pecuniary losses, loss of support, care, comfort and companionship, loss of society, advice, assistance and protection

and other general, special, punitive and exemplary damages experienced by decedent's legal heirs in an amount to be determined by the jury at trial of this action.

## COUNT I
## STRICT LIABILITY DEFECTIVE IN DESIGN

23. Plaintiffs incorporate herein by reference each and every allegation contained in Paragraphs 1 through 22 of the Amended Complaint as though set forth entirely herein.

24. The subject rifle as designed, manufactured, sold, and distributed by Defendants was in a defective condition that created foreseeable risks of harm which could have been reduced or avoided by the adoption of a reasonable alternative design by Defendants, the omission of which rendered the subject rifle not reasonably safe.

25. Randall Zick used the subject rifle in a reasonably foreseeable manner.

26. The subject rifle as designed, manufactured, sold, and distributed by Defendants was in a defective condition that rendered the subject rifle unreasonably dangerous to persons or property.

27. The subject rifle was defective and unreasonably dangerous when it was sold by Defendants and at the time it left their possession and control.

28. The subject rifle as designed, manufactured, sold, and distributed by Defendants was in substantially the same condition as when it was manufactured by Defendants.

29. Decedent was injured as a direct and proximate result of the defective design, manufacture, sale, and distribution of the subject rifle.

30. Plaintiffs have suffered and are entitled to recover damages from Defendants as a direct and proximate result of the defective design, manufacture, sale, and distribution of the subject rifle.

31. Defendants' conduct in the design, manufacture, sale, and distribution of the subject rifle was outrageous, done with actual knowledge and malice, exhibiting a complete indifference or

conscious disregard for the rights and safety of users and consumers of the rifle and the general public, justifying punitive or exemplary damages.

## COUNT II
## STRICT LIABILITY INADEQUATE INSTRUCTIONS OR WARNINGS

32. Plaintiffs incorporate herein by reference each and every allegation contained in Paragraphs 1 through 31 of the Amended Complaint as though set forth entirely herein.

33. The subject rifle was in a defective and unreasonably dangerous condition because of inadequate instructions or warnings that created foreseeable risks of harm posed by the subject rifle that could have been reduced or avoided by the provision of reasonable instructions or warnings by Defendants, the omission of which rendered the subject rifle not reasonably safe.

34. The subject rifle was in a defective and unreasonably dangerous condition because of inadequate instructions or warnings that rendered the subject rifle unreasonably dangerous to persons or property.

35. The subject rifle was defective and unreasonably dangerous because of inadequate instructions or warnings when it was sold by Defendants and at the time it left their possession and control.

36. The subject rifle as designed, manufactured, sold, and distributed by Defendants was in substantially the same condition as when it was manufactured by Defendants.

37. Neither Randall Zick nor decedent had any knowledge of such defective conditions present in the subject rifle and had no reason to suspect it was unreasonably dangerous prior to the inadvertent discharge which led to decedent's death.

38. As a direct and proximate result of the failure to warn of the subject rifle's propensity to unexpectedly discharge without pulling the trigger and failure to properly instruct about its care and maintenance, Plaintiffs have suffered and are entitled to recover damages from Defendants.

9

39. Defendants' conduct in the failure to warn of the subject rifle was outrageous, done with actual knowledge and malice, exhibiting a complete indifference or conscious disregard for the rights and safety for users and consumer of the rifle and the general public, justifying punitive or exemplary damages.

## COUNT III
## NEGLIGENT DESIGN AND MANUFACTURE

40. Plaintiffs incorporate herein by reference each and every allegation contained in Paragraphs 1 through 39 of the Amended Complaint as through set forth entirely herein.

41. Defendants negligently designed, manufactured, sold, and distributed the subject rifle in its defective and unreasonably dangerous condition.

42. Defendants were negligent in one or more of the following respects:

   a. In designing a fire control with a "trigger connector";

   b. In designing a fire control that failed to permit a handler to load or unload the rifle while the safety was in the "safe" position;

   c. In designing a fire control with manufacturing tolerance build up;

   d. In designing a fire control that failed to include preset engagement between the trigger connector and the sear;

   e. In designing a fire control that was susceptible to the accumulation of debris, lubrication build up, and/or the accumulation of rust;

   f. In designing a fire control that was susceptible to adjustment;

   g. In designing a fire control that was susceptible to the presence of manufacturing burrs or debris;

   h. In designing a fire control that will fire without a pull of the trigger;

    i. In designing a fire control that will fire when the safety is shifted from the "safe" to the "fire" position;

    j. In designing a fire control that will fire when the bolt is cycled;

    k. In designing a fire control that will "jar off";

    l. In designing a fire control that uses improper materials, including "powered metal" for the sear that are unusually susceptible to normal wear and tear;

    m. In manufacturing a fire control that has burrs or manufacturing debris within the fire control;

    n. In manufacturing a fire control without proper or adequate quality control procedures or checks;

    o. In failing to warn users and handlers of the rifles of the potential for firings in the absence of a pull of the trigger;

    p. In failing to warn users and handlers of the risks and hazards of improper maintenance of the rifle;

    q. In failing to warn users and handlers of the risks and hazards of adjustment of the fire control;

    r. In failing to inform or advise users and handlers of the proper procedures for maintenance of the rifle; and

    s. In failing to inform or advise users and handlers of the proper procedures for adjustments to the fire control.

43. As a direct and proximate result of Defendants' negligent design, manufacture, sale, and distribution of the subject rifle, Plaintiffs have suffered and are entitled to recover damages from Defendants.

44. Defendants' conduct in the design, manufacture, sale, and distribution of the subject rifle was outrageous, done with actual knowledge and malice, exhibiting a complete indifference or conscious disregard for the rights and safety of users and consumers of the rifle and the general public, justifying punitive or exemplary damages.

## COUNT IV
## NEGLIGENT FAILURE TO WARN

45. Plaintiffs incorporate herein by reference each and every allegation contained in Paragraphs 1 through 44 of the Amended Complaint as though set forth entirely herein.

46. Defendants negligently failed to warn of the subject rifle's propensity to discharge unexpectedly without pulling the trigger and failed to properly instruct about its care and maintenance.

47. Neither Randall Zick nor decedent had any knowledge of said defective conditions present in the subject rifle and had no reason to suspect it was unreasonably dangerous prior to the inadvertent discharge which led to decedent's death.

48. As a direct and proximate result of Defendants' negligent failure to warn of the subject rifle's propensity to unexpectedly discharge and failure to properly instruct about its care and maintenance, Plaintiffs have suffered and are entitled to recover damages from Defendants.

49. Defendants' conduct in the design, manufacture, sale, and failure to warn of the subject rifle was outrageous, done with actual knowledge and malice, exhibiting a complete indifference or conscious disregard for the rights and safety of users and consumers of the rifle and the general public, justifying punitive or exemplary damages.

WHEREFORE, Plaintiffs' pray for judgment against Defendants as follows:

    A. For compensatory, special, and general damages against Defendants, jointly and severally, in a fair and reasonable amount as the jury deems just and

      equitable under the circumstances and commensurate with Plaintiffs' losses in excess of Seventy Five Thousand ($75,000) Dollars;

B. For punitive or exemplary damages against Defendants, jointly and severally, in an amount necessary to deter or prevent similar conduct in the future;

C. For attorney's fees and costs incurred in this action as permitted by law;

D. For interest from the date of the accident as permitted by law; and

E. For such further and additional relief as this Court deems just and proper.

## **DEMAND FOR TRIAL BY JURY**

Plaintiffs pray that the causes of action alleged herein by tried in this Court before a jury of their peers.

RESPECTFULLY SUBMITTED this 10th day of January, 2017.

                Respectfully Submitted,

                MONSEES & MAYER, P.C.
                A Professional Corporation

                By */s/ Timothy W. Monsees*
                    Timothy W. Monsees (MO Bar #31004)
                    Robert A. Thrasher (MO Bar #65231)
                    4717 Grand Ave., Ste. 820
                    Kansas City, Missouri 64112
                    tmonsees@monseesmayer.com
                    rthrasher@monseesmayer.com

DOAR DRILL & SKOW, S.C.
A Service Corporation

By */s/ Matthew Biegert*
    Matthew Biegert (WI Bar #1000368)
    Mackenzie Campbell (WI Bar #1098324)
    103 North Knowles Avenue
    New Richmond, WI 54017
    mbiegert@doardrill.com
    mcampbell@doardrill.com